AO 245E (Rev. 12/03) Judgment in a Criminal Case for Organizational Defendants
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of North Carolina

UNITED STATES OF AMERICA
V.
DUKE ENERGY BUSINESS SERVICES LLC

**JUDGMENT IN A CRIMINAL CASE**
(For Organizational Defendants)

CASE NUMBER: 5:15-CR-62, 67 & 68

James P. Cooney, III
Defendant Organization's Attorney

## THE DEFENDANT ORGANIZATION:

☑ pleaded guilty to count(s)   Ct 1 (5:15-CR-62-H-1), Cts 1 - 6 (5:15-CR-67-H-1), and Cts 1 - 2 (5:15-CR-68-H-1)

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The organizational defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | Docket No. 5:15-CR-62-H-1 | | |
| 33 USC §§1311, 1319, 1342, and 18 USC § 2 | Negligent Discharge of Pollutants from a Point Source and Aiding and Abetting | December 30, 2014 | 1 |

The defendant organization is sentenced as provided in pages 2 through  8  of this judgment.

☐ The defendant organization has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant organization must notify the United States attorney for this district within 30 days of any change of name, principal business address, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant organization must notify the court and United States attorney of material changes in economic circumstances.

Defendant Organization's
Federal Employer I.D. No.:  56-2115358

Defendant Organization's Principal Business Address:

550 South Tryon Street
Charlotte, NC 28202

May 14, 2015
Date of Imposition of Judgment

/s/ Malcolm J. Howard
Signature of Judge

Malcolm J. Howard        Senior U.S. District Judge
Name of Judge            Title of Judge

May 14, 2015
Date

Defendant Organization's Mailing Address:

550 South Tryon Street
Charlotte, NC 28202

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | Docket No. 5:15-CR-67-H-1 | | |
| 33 USC §§ 1311, 1319, 1342, and 18 USC § 2 | Negligent Discharge of Pollutants from a Point Source and Aiding and Abetting | February 8, 2014 | 1 |
| 33 USC §§ 1319, 1342, and 18 USC § 2 | Failure to Maintain Treatment System Equipment and Related Appurtenances, and Aiding and Abetting | February 2, 2014 | 2 |
| 33 USC §§ 1311, 1319, 1342, and 18 USC § 2 | Negligent Discharge of Pollutants from a Point Source and Aiding and Abetting | February 21, 2014 | 3 |
| 33 USC §§ 1319, 1342, and 18 USC § 2 | Failure to Maintain Treatment System Equipment and Related Appurtenances, and Aiding and Abetting | February 6, 2014 | 4 |
| 33 USC §§ 1319, 1342 and 18 USC § 2 | Failure to Maintain Treatment System Equipment and Related Appurtenances, and Aiding and Abetting | January 24, 2014 | 5 & 6 |
| | Docket No. 5:15-CR-68-H-1 | | |
| 33 USC §§ 1311, 1319, 1342, and 18 USC § 2 | Negligent Discharge of Pollutants from a Point Source and Aiding and Abetting | December 30, 2014 | 1 & 2 |

# PROBATION

The defendant organization is hereby sentenced to probation for a term of:

5 years. This term consists of 5 years on Count 1 of Docket No. 5:15-CR-62-H-1, 5 years on Counts 1 through 6 of Docket No. 5:15-CR-67-H-1, and 5 years on Counts 1 and 2 of Docket No. 5:15-CR-68-H-1, all such terms to run concurrently.

The defendant organization shall not commit another federal, state or local crime.

If this judgment imposes a fine or a restitution obligation, it is a condition of probation that the defendant organization pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant organization must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page (if indicated below).

## TERMS OF PROBATION

While on probation, the defendant shall not commit another federal, state, or local crime. If the defendant learns of any such violations committed by its agents or employees within the scope of their employment during the term of probation, the defendant shall, within five (5) business days, notify the United States Probation Office of the violations.

The defendant shall comply with all federal, state, and other regulations relating to coal ash during the period of probation. The defendant shall not have any new notices of violation, notices of deficiencies, or other criminal, civil or administrative enforcement actions with respect to coal ash while on probation. It shall be considered to be a violation of probation if the defendant receives any new notices of violation, notices of deficiencies, or other criminal, civil or administrative enforcement actions with respect to coal ash and based on conduct, including the failure to act, occurring after entry of this judgment in which a final assessment, after the conclusion of any appeals, of more than $5,000 is imposed and is deemed material by the court. Continued on the following page...

DEFENDANT ORGANIZATION: DUKE ENERGY BUSINESS SERVICES LLC          Judgment—Page  4  of  8
CASE NUMBER: 5:15-CR-62, 67 & 68

# ADDITIONAL PROBATION TERMS

Any conduct or conditions resulting in a final assessment of more than $15,000 shall be presumed to be material and a violation of probation. The Court will not consider there to be a violation of the conditions of probation if the defendant complies with federal environmental laws when there is a direct conflict between the state and federal environmental laws. The Court will also not deem it to be a violation of probation if the enforcement action is based upon information disclosed by the defendant in its 2014 Topographical Map and Discharge Assessment and/or its 2014 National Pollutant Discharge Elimination System permit renewal application. Further, the defendant shall comply with the following additional conditions:

1. The defendant shall cooperate fully with the United States Probation Office during the period of supervision including truthfully answering any inquiries by the probation office. The defendant shall provide the probation office with the following: full access to any of the defendant's operating locations; 10 days prior notice of any intended change in principal business or mailing address; and notice of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay fines or meet other financial obligations as set forth in this Judgment.

2. The defendant and its two codefendants, Duke Energy Carolinas, LLC and Duke Energy Progress, Inc., (collectively "the defendants,") shall pay for a court appointed monitor (CAM) as set forth in Paragraphs 2A through 2I of Exhibit A of this Judgment. Exhibit A has been provided to the parties, and they have agreed to the conditions contained therein.

3. The defendant shall develop, adopt, implement, and fund a comprehensive nationwide environmental compliance plan (NECP) and a comprehensive statewide environmental compliance plan (ECP-NC) as set forth in Paragraphs 3A through 3H of Exhibit A of this Judgment. Exhibit A has been provided to the parties, and they have agreed to the conditions contained therein.

4. The defendants shall adopt, implement, and enforce a comprehensive environmental training program for all domestic employees as set forth in Paragraph 4A of Exhibit A of this Judgment. Exhibit A has been provided to the parties, and they have agreed to the conditions contained therein.

5. The defendant shall cooperate with the bromide remediation claims process as detailed in the Plea Agreement.

6. The defendant shall identify or establish a position as a compliance officer at the Vice President level or higher, who will liaise with the CAM and the United States Probation Office as set forth in Paragraphs 6A and 6B of Exhibit A of this Judgment. Exhibit A has been provided to the parties, and they have agreed to the conditions contained therein.

7. The defendant shall ensure that any new, expanded, or reopened coal ash or coal ash wastewater impoundments at any facilities owned by the defendant are lined. At such impoundments, the defendant shall ensure that there are no unpermitted discharges of coal ash or coal ash wastewater from any engineered, channelized, or naturally occurring seeps. Coal ash and wastewater impoundments will be subject to inspection by the CAM and/or United States Probation Office at any time.

8. The defendants shall, within five (5) business days of entry of this Judgment, place a full-page (132 column inches) public apology in at least two national newspapers and a major newspaper in each of Raleigh, Greensboro, and Charlotte, North Carolina. The language of the public apology has been agreed upon by the parties and is contained in Exhibit C of the Plea Agreement. Proof of each public apology shall be provided to the United States Probation Office within seven (7) days of being placed in each respective newspaper.

9. The defendant shall not seek or take credit for any fine, restitution, community service payment, mitigation payment, or funding of the environmental compliance plan, including the costs associated with the hiring or payment of staff or consultants needed to assist the CAM, in any related civil or administrative proceeding, including, but not limited to, the Natural Resources Damages Assessment process.

## ADDITIONAL PROBATION TERMS

10. The defendant shall not capitalize into inventory or basis or take as a tax deduction, in the United States or elsewhere, any portion of the monetary payments (fine, restitution, community service, mitigation, or funding of the environmental compliance plans) imposed as part of this Judgment. Provided, however, that nothing in this Judgment shall bar or prevent the defendant from appropriately capitalizing or seeking an appropriate tax deduction for restitution in connection with the remediation of bromide claims, as set forth in the Plea Agreement, or for costs which would have been incurred by the defendant regardless of the environmental compliance plans (costs that would have been incurred irrespective of the environmental compliance plans include, by way of example only, costs for staffing and operating Central Engineering Services, ABSAT, Coal Combustion Products, or other similar organizations.)

11. The defendant shall not reference the burden of, or the cost associated with, compliance with the criminal fines, restitution related to counts of conviction, the community service payments, the mitigation obligation, costs of the clean-up in response to the February 2, 2014, release at Dan River Steam Station, and funding of the environmental compliance plans, in any request or application for a rate increase on customers. Provided, however, that nothing in this Judgment shall bar or prevent the defendant from seeking appropriate recovery for restitution in connection with the remediation of bromide claims, as set forth in the Plea Agreement, or which would have been incurred by the defendant regardless of the environmental compliance plans (costs that would have been incurred irrespective of the environmental compliance plans include, by way of example only, costs for staffing and operating Central Engineering Services, ABSAT, Coal Combustion Products, or other similar organizations.)

12. The defendant shall exercise its best efforts to comply with each and all of the obligations under both the NECP and ECP-NC. Any attempted reliance on the "force majeure" clause to excuse performance or timely performance of any condition of the NECP and ECP-NC should be exercised by the defendant in accordance with the provisions of the Plea Agreement.

The special conditions of probation shall hereafter be subject to review by the Court upon petition or motion by the United States Probation Office, the Court Appointed Monitor, either of the parties, or on its own motion.

DEFENDANT ORGANIZATION: DUKE ENERGY BUSINESS SERVICES LLC
CASE NUMBER: 5:15-CR-62, 67 & 68

Judgment — Page 6 of 8

## CRIMINAL MONETARY PENALTIES

The defendant organization must pay the following total criminal monetary penalties under the schedule of payments on Sheet 4.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 1,125.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant organization shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant organization makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant organization shall pay interest on restitution or a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 4 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant organization does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

The Court Finds that in light of total criminal penalties of 68 million dollars ($68,000,000) being paid by its codefendants, Duke Energy Progress, Inc., and Duke Energy Carolinas, LLC, and the overall corporate structure as it relates to this defendant, no further fine is necessary. Therefore, no fine is being imposed.

Special Assessment Breakdown:

Docket No. 5:15-CR-62-H-1

Ct. 1: $125.00

Docket No. 5:15-CR-67-H-1

Ct. 1: $125.00

Ct. 2: $125.00

Ct. 3: $125.00

Ct. 4: $125.00

Ct. 5: $125.00

Ct. 6: $125.00

Docket No. 5:15-CR-68-H-1

Ct. 1: $125.00

Ct. 2: $125.00

DEFENDANT ORGANIZATION: DUKE ENERGY BUSINESS SERVICES LLC
CASE NUMBER: 5:15-CR-62, 67 & 68

Judgment — Page __8__ of __8__

# SCHEDULE OF PAYMENTS

Having assessed the organization's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ☑ Lump sum payment of $ __1,125.00__ due immediately, balance due

    ☑ not later than __May 15, 2015__ , or
    ☐ in accordance with ☐ C or ☑ D below; or

B ☐ Payment to begin immediately (may be combined with ☐ C or ☐ D below); or

C ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☑ Special instructions regarding the payment of criminal monetary penalties:

The defendant shall make payment to the Clerk of Court for the Eastern District of North Carolina at 310 New Bern Avenue, Raleigh, North Carolina, on or before 1:00 p.m. on Friday, May 15, 2015.

All criminal monetary penalties are made to the clerk of the court.

The defendant organization shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant organization shall pay the cost of prosecution.

☐ The defendant organization shall pay the following court cost(s):

☐ The defendant organization shall forfeit the defendant organization's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 5:15-CR-62-H-1 |
| | ) | NO. 5:15-CR-67-H-1 |
| DUKE ENERGY BUSINESS SERVICES LLC | ) | NO. 5:15-CR-68-H-1 |
| Defendant | ) | |

## EXHIBIT A TO THE JUDGMENT

## ADDITIONAL SPECIAL CONDITIONS OF PROBATION

1A. As incorporated by reference in Paragraphs 2, 3, 4, and 6 of the Judgment entered on May 14, 2015, against the above-named defendant, the defendant, Duke Energy Business Services LLC, shall comply with the following additional special conditions of probation:

### Court Appointed Monitor

2A. The defendants[1] shall pay for reasonable costs and expenses approved by the Court for the authorized work of a Court Appointed Monitor (CAM) who will report to the Court and/or, through the United States Probation Office, during the period of probation. The CAM will be responsible for overseeing the implementation of both the national and state comprehensive environmental compliance plans as well as the bromide claims process. Within 30 days of judgment being entered in this case, the defendants shall submit to the Court and the government a list of three qualified candidates for the position of CAM. The Court directs that proposed candidates have a staff, or be able to retain staff, and have experience in regulatory programs under the United States and North Carolina Environmental Law. Further, the CAM must have sufficient expertise and competence to assess whether the defendants have adequate management systems in place to ensure regulatory compliance, document noncompliance, and to prevent future noncompliance. Finally, the CAM must have sufficient expertise to review claims for reimbursement under the process for identifying, verifying, and providing restitution for claims related to bromide discharge.

---

[1] Reference to "the defendants" in this document refers collectively to the defendant named in this Judgment along with its codefendants, Duke Energy Carolinas, LLC, and Duke Energy Progress, Inc.

2B.  The government shall have 15 days from receipt of the nominations to file any reasonable objection to any or all of the proposed candidates. In the event the government lodges an objection to a candidate, the defendant will have an additional 15 days to nominate replacement candidates. The government, in turn, has the right to lodge additional objections to any replacement candidate as detailed above. The deadline for filing a finalized list of candidates for the Court's review shall not exceed 75 days from entry of judgment in this case. Upon receipt of a final list of candidates, the Court shall select a CAM. In the event that the Court does not find any of the candidates satisfactory or if, during any point in the term of probation, the Court does not find the work of the selected CAM satisfactory, the defendants will be directed to nominate additional candidates as outlined above. Compensation for the CAM will be determined and approved by the Court as provided in a separate Order to be issued in due course.

2C.  Within the first ninety (90) days of appointment, the CAM shall establish a schedule for conducting environmental audits of each of the defendant's coal ash impoundments on an annual basis. Defendants may request that the CAM accept any full environmental audit prepared by ABSAT or a similar organization in that same calendar year for facilities subject to the audits under the Nationwide Environmental Compliance Program (NECP) and Comprehensive Statewide Environmental Compliance Plan (ECP-NC). The CAM may reject any such request by defendants if the CAM concludes that the proposed environmental audit is not sufficiently comprehensive or not prepared by a competent organization. Copies of the environmental audit reports shall be posted on the defendants' company webpage(s) and accessible to the public. Subject to approval of the CAM, the defendant may redact confidential business information or any information it reasonably believes could impair the security of its operations before such audits or reports are posted for public access. The CAM shall inspect such proposed redactions to determine the propriety of the redactions. Notwithstanding the foregoing, unredacted copies shall be provided to the Court and the United States Probation Office. Defendants may seek to have the filings placed under seal to protect any information that the CAM has deemed to warrant redaction.

2D.  The CAM shall provide copies of the reports, as posted, to the United States Attorneys' Offices for the Eastern, Middle, and Western Districts of North Carolina; the Department of Justice – Environmental Crimes Section; the United States Environmental Protection Agency – Criminal Investigation Division; and the United States Environmental Protection Agency – Legal Counsel Division. If the reports contain redactions, any of these parties may inspect the redactions to determine the propriety of the redactions. The Court shall be the final arbiter of any challenge to the redactions.

2E.  On an annual basis or as often as the Court directs, the CAM shall provide a report in writing to the Court, through the United States Probation Office, demonstrating whether the defendant is in compliance with the NECP and the ECP-NC. The report shall include, among other things, a detailed description of all excavation, closure, and proper remediation of the coal ash impoundments located in North Carolina and addressed in the ECP-NC, and the status of defendant's compliance with all appropriate environmental laws and regulations in connection with the management of its coal ash impoundments in North Carolina and elsewhere.

2F.  The defendant shall post copies of any environmental compliance audits, annual reports, and/or any other reports prepared pursuant to the NECP or ECP-NC on a company web page with public access. All posts shall remain on the company website for the entire term of probation. As new documents are posted, previous posts may be moved to an archived location provided that they remain accessible to the public through the company website. Subject to approval by the CAM, defendant may redact confidential business information or any information it reasonably believes could impair the security of its operations before such audits or reports are posted for public access. The CAM shall inspect such proposed redactions to determine the propriety of the redactions. Notwithstanding the foregoing, unredacted copies shall be provided to the Court and the United States Probation Office. The defendant may seek to have the filings placed under seal to protect any information the CAM has deemed to warrant redaction.

2G.  The CAM shall contemporaneously provide copies, as posted, of any reports to the United States Attorneys' Offices for the Eastern, Middle, and Western Districts of North Carolina; the Department of Justice – Environmental Crimes Section; the United States Environmental Protection Agency – Criminal Investigation Division; and the United States Environmental Protection Agency – Legal Counsel Division. If the reports contain redactions, any of these parties may inspect the redactions and challenge the propriety of the redactions subject to review by this Court.

2H.  The defendants shall establish and maintain, within thirty (30) days of the appointment of a CAM by the Court, a toll-free hotline that will be answered twenty-four (24) hours per day, seven (7) days per week, through which any person may report suspected violations of applicable environmental laws or regulations, or violations of the NECP or ECP-NC. The defendants may utilize existing toll-free hotlines subject to approval by the CAM. The defendants shall, within 30 days of the appointment of a CAM by the Court, also create an electronic mail inbox accessible from its webpages and accessible through a share link, through which any employee of Duke Energy Corporation, its subsidiaries, or its affiliates, or any other person may report suspected violations of applicable environmental laws or regulations or violations of the NECP or ECP-NC. All suspected violations will be reported to the CAM within five (5) business days of receipt. In the event that the defendants establish the toll-free hotline prior to the appointment of the CAM, the compliance officer shall maintain a record of the investigation and disposition of

3

each suspected violation and provide such matters, as requested, to the United States Probation Office. Upon appointment of the CAM, the compliance officer shall disclose to the CAM any previous record of the investigation and the disposition of each suspected violation.

2I. The defendant shall, within thirty (30) days of the appointment of a CAM in this case, apprise employees and the public of the availability of the toll-free hotline and electronic mail inbox by posting notices on the Internet, Intranet (known within Duke Energy Corporation as the "Portal"), by distributing notice via its electronic mail system, and by publication in appropriate employee work areas and community outlets. Additional notifications will be made periodically as directed by the CAM during the period of probation. All reports of suspected violations of applicable environmental requirements, the NECP, or the ECP-NC shall promptly be provided to the compliance officer for further action. The compliance officer shall maintain a record of the investigation and disposition of each suspected violation and disclose such matters in monthly reports to the CAM.

## **Environmental Compliance**

3A. The defendant shall cause, assist, and otherwise take all steps necessary to develop, adopt, and implement a Comprehensive Nationwide Environmental Compliance Plan (NECP) and a Comprehensive Statewide Environmental Compliance Plan (ECP-NC), which incorporates all requirements of the NCEP, as approved by the court, during the term of probation. Consistent with the provisions of the Plea Agreement, the defendant shall develop and adopt the NECP and ECP-NC within seventy (70) days of the selection of the CAM. A copy of the final NECP and ECP-NC shall be submitted to the Court, the United States Probation Office, the United States Attorneys' Offices for the Eastern, Middle, and Western Districts of North Carolina; the Department of Justice – Environmental Crimes Section; the United States Environmental Protection Agency – Criminal Investigation Division; and the United States Environmental Protection Agency – Legal Counsel Division for review. Final approval of the NECP and ECP-NC will be made by the Court.

3B. Upon approval of the compliance plans by the Court, the defendant shall, either in written correspondence or through electronic mail communication, notify its employees of its criminal behavior and the compliance plan. In addition, the defendant shall cause a notice containing the same information to be sent to the shareholders of Duke Energy Corporation in a form and date as prescribed by the CAM.

3C. The defendant shall maintain and fund the operation of all of the compliance organizations created as a result of the instant offenses, including: Ash Basin Strategic Action Team (ABSAT), the Coal Combustion Products Organization, and the National Ash Management Advisory Board. To the extent necessary, the defendants may transfer operations and responsibilities

4

between internal organizations or adjust funding of such organizations as deemed appropriate by the CAM. The defendant and the CAM will notify the United States Probation Office of any substantial changes to these organizations. The defendant shall pay its proportionate share of the continued maintenance and operations of these organizations. Failure to pay by any of the other defendants individually will not relieve the defendant of its obligation to fund these organizations.

3D. The defendant shall, with respect to each of the facilities with coal ash impoundments in North Carolina, identify or establish a point of contact for the CAM within each of the following three business services: ABSAT; Environmental, Health & Safety; and Coal Combustion Products.

3E. The defendant shall ensure that Duke Energy Carolinas, LLC, and Duke Energy Progress, Inc., comply with all legislative and regulatory mandates concerning closure of the coal ash impoundments which it operates, and shall ensure complete excavation and closure of all of the coal ash impoundments at the Dan River, Riverbend, Sutton, and Asheville facilities in accordance with federal and state laws, including the United States Environmental Protection Agency's ("EPA") 2014 final rule governing the disposal of coal combustion residuals from electric utilities ("CCR Rule") and North Carolina's Coal Ash Management Act of 2014, by the deadlines established by those laws. The defendant shall act diligently and in good faith to help its codefendants to meet projected critical milestones in the closure plans for each site as set forth in the following documents: Duke Energy's Dan River Steam Station Coal Ash Excavation Plan dated November 13, 2014; Duke Energy's Riverbend Steam Station Coal Ash Excavation Plan dated November 13, 2014; Duke Energy's L.V. Sutton Electric Plant Coal Ash Excavation Plan dated November 13, 2014; and Duke Energy's Asheville Steam Electric Generating Plant Coal Ash Excavation Plan dated November 13, 2014, as may be amended with the approval of the North Carolina Department of Environment and Natural Resources.

3F. Every six months, or as often as deemed necessary by the CAM, the defendant shall assist and coordinate with its codefendants to ensure that they provide the CAM with a detailed, consolidated description of its efforts to facilitate the excavation of coal ash and the closure of all of the coal ash impoundments at the Dan River, Riverbend, Sutton and Asheville facilities. Further, the defendant shall inform the CAM as to whether it has met the critical milestones set forth in the Excavation Plans in the time period since the last report. The defendant shall also include the status of all permits and permit applications with any regulatory body, including but not limited to North Carolina Department of Environment and National Resources. The defendant shall also make such reports publicly available on its website throughout the duration of its term of probation. The CAM shall immediately notify the Court, the United States Probation Office, and the parties if it has any concerns regarding whether the defendant has acted diligently or in good faith to meet its obligations under this provision.

5

3G. The defendants shall coordinate to determine the volume of wastewater and coal ash in each of its wet-storage coal ash impoundments in North Carolina every six months or as directed by the CAM. Additional determinations shall be made following the conclusion of activities that significantly change the volumes of materials in the impoundments, including but not limited to temporary rerouting of waste streams other than sluiced coal ash to the ash impoundment, dredging, and dewatering. Written or electronic records of the volumes shall be maintained by the defendants in a location(s) accessible to facility staff, the defendant's employees responsible for making environmental or emergency reports, and the CAM.

3H. The defendant shall, by November 14, 2019, or no later than six months prior to the scheduled termination date of probation, provide the Court, the United States Probation Office, the CAM, and the government with a full report of its efforts to facilitate the excavation of coal ash and closure of all of the coal ash impoundments at Dan River, Riverbend, Sutton, Asheville, and the anticipated completion date.

## Comprehensive Training Program

4A. The defendant shall, within the first 12 months of probation, adopt, implement, and enforce a comprehensive training program to educate all domestic employees of Duke Energy Corporation and its wholly-owned or operated affiliates on the environmental impact of coal ash impoundment operations and to be aware of the procedures and policies that form the basis of the NECP and ECP-NC. The training program, shall, to the extent practicable, ensure that every employee of Duke Energy Corporation understands applicable compliance policies and is able to integrate the compliance objectives in the performance of his/her job. The training shall include applicable notice and reporting requirements in the event of a release or discharge. Subject to the approval of the CAM, defendant may develop different training programs that are tailored to the employee's specific job description and responsibilities as long as the overall goal of the training requirement is met. The defendant shall also provide to employees training and written materials describing the safe and proper handling of pollutants, hazardous substances, and wastes. Copies of all written materials and training curricula shall be provided to the CAM and the United States Probation Officer upon request.

## Designated Point of Contact

6A. The defendant shall, within 60 days of this Judgment, identify or establish a position as compliance officer at the Vice President level or higher who will liaise with the CAM and the United States Probation Office. The designated compliance officer shall have, among other duties, the primary responsibility for ensuring compliance with applicable environmental requirements and requirements of the NECP and ECP-NC. The compliance officer shall submit detailed reports to the CAM regarding the development, implementation, and enforcement of the

6

NECP and ECP-NC as directed by the CAM, but no less than two times per year. The first report shall also include an explanation of the current corporate structure responsible for the operation and control of the coal ash impoundments and the names of the individuals filling the relevant positions. With the approval of the CAM, the compliance officers for the defendants may elect to submit a joint report detailing the required information for all three defendants. Any changes to the corporate coal ash oversight structure shall be immediately forwarded to the CAM and included in the next regular report.

6B.  Subject to the approval of the CAM, defendant may redact confidential business information or any information it reasonably believes could impair the security of its operations before such reports are posted for public access. The defendant may seek to have the unredacted report submitted to the Court placed under seal to protect any information that the CAM or Court has deemed to warrant redaction. The CAM shall contemporaneously provide copies of the reports (as posted) to the United States Attorneys' Offices for the Eastern, Middle, and Western Districts of North Carolina; the Department of Justice – Environmental Crimes Section; the United States Environmental Protection Agency – Criminal Investigation Division; and the United States Environmental Protection Agency – Legal Counsel Division. If the reports contain redactions, any of these parties may inspect the redactions and challenge the propriety of the redactions. The Court shall be the final arbiter of any challenge by either party as to the redactions.